## NIAGARA OYER AND TERMINER.

### THE PEOPLE agt. GEORGE MOORE.

*Practice in criminal cases — Wife not a competent witness against her husband — When indictment will be quashed.*

No evidence should be presented to a grand jury which would not be legal and competent at the trial before the traverse jury.

An indictment should be quashed when it appears by affidavit that it was found by the grand jury without adequate evidence to sustain it.

A wife is not a competent witness against her husband, and cannot be called against him by the people without his consent.

Where it appears by affidavit that the wife of a defendant was introduced as a witness before the grand jury without the consent and against the will of the husband (the defendant), and her testimony before the grand inquest being vitally material the indictment should be set aside.

*Niagara Oyer and Terminer, October,* 1882.

*Benjamin J. Hunting,* district-attorney, for people.

*W. Henry Davis,* for defendant.

THE following is a copy of the indictment, or two counts of the same, as found by the grand jury :

STATE OF NEW YORK, } *ss.:*
 NIAGARA COUNTY.

The jurors of the people of the state of New York, in and for the body of the county of Niagara aforesaid, upon their oath present that George Moore, late of the city of Lockport, in the county of Niagara aforesaid, on the sixteenth day of November, in the year of our Lord one thousand eight hundred and seventy-eight, and on divers other days and times between that day and the eighth day of December, in the year last aforesaid, with force and arms, at the city of Lockport, in the county of Niagara aforesaid, in and upon one Emma Roberts, in the peace of God and the said people, then and there being feloniously, willfully and of his malice afore-

thought, did make divers assaults, and that the said George Moore with divers certain instruments and weapons to the jurors aforesaid unknown, which he, the said George Moore, in his hands then and there had and held in and upon the head, neck, body, arms, hands and legs of the said Emma Roberts, then and there feloniously, willfully and of his malice aforethought, did strike and beat, giving unto the said Emma Roberts, then and there with the instruments and weapons aforesaid to the jurors aforesaid unknown, by the striking and beating aforesaid in manner aforesaid, in and upon the head, neck, body, arms, hands and legs of the said Emma Roberts, divers mortal strokes, wounds, bruises and contusions, of which mortal strokes, wounds, bruises and contusions aforesaid, the said Emma Roberts on the day and year last aforesaid, at the city of Lockport, in the county of Niagara aforesaid, did die, and so the jurors aforesaid, upon their oaths aforesaid, do say that the said George Moore, her, the said Emma Roberts, in the manner and form and by the means aforesaid, at the city of Lockport, in the county of Niagara aforesaid, on the day and year last aforesaid, feloniously, willfully and of his malice aforethought, did kill and murder against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity.

And the jurors aforesaid upon their oaths aforesaid, do further present that the said George Moore on the 16th day of November, in the year of our Lord 1878, and on divers other days and times between that day and the eighth day of December, in the year last aforesaid, with force and arms, at the city of Lockport, in the county of Niagara aforesaid, in and upon the said Emma Roberts, in the peace of God and of the said people then and there being, feloniously, willfully and of his malice aforethought, did make divers other assaults, and that the said George Moore with certain leather straps which he the said George Moore, in his right hand then and there had and held in and upon the head, neck, body, arms, hands and legs of the said Emma Roberts, then and there

feloniously, willfully and of his malice aforethought, did strike and beat, giving unto the said Emma Roberts, then and there with the leathern strap aforesaid, the striking and beating last aforesaid in manner last aforesaid, in and upon the head, neck, body, arms, hands and legs of the said Emma Roberts, divers mortal strokes, wounds, bruises and contusions, of which mortal strokes, wounds, bruises and contusions last aforesaid, the said Emma Roberts on the day and year last aforesaid, at the city of Lockport, in the county of Niagara aforesaid, did die.

And the jurors aforesaid upon their oaths aforesaid, do say that the said George Moore, her the said Emma Roberts, in the manner and form and by the means last aforesaid, at the the city of Lockport, in the county of Niagara aforesaid, on the day and year last aforesaid, feloniously, willfully and of his malice aforethought, did kill and murder against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity.

BENJAMIN J. HUNTING,
*District Attorney of Niagara county.*

The following are copies of the affidavits upon which defendant's counsel moved the court to permit the defendant to withdraw his plea of "not guilty," to the end that his counsel might make a motion to set aside the indictment:

STATE OF NEW YORK, ⎫ *ss. :*
Monroe County, City of Rochester. ⎰

W. Henry Davis, being duly sworn, says he is an attorney and counselor-at-law, residing and doing business in the city of Rochester, New York, and that he is the defendant's counsel herein. That deponent has been recently informed by Carrie Moore, the wife of defendant that she testified and gave evidence before the grand jury, which found this bill of indictment against defendant and without his defendant's knowledge or consent. Deponent further says he has examined the

minutes of evidence taken before the said grand jury, and thereby finds that the said Carrie Moore, defendant's said wife, then and there testified that the said defendant on several occasions shortly prior to the death of Emma Roberts, whipped and punished her to an immoderate degree with divers whips, leathern straps, sticks and instruments, and that he tied her up by the thumbs and cruelly hurt and injured her in divers ways; that independent of her testimony no indictment could or would have been found for the crime of murder by the grand jury as deponent verily believes; that at the time defendant was arraigned he had no counsel in attendance, and had no knowledge that his wife had been sworn before the grand jury which indicted him; that deponent was informed · by the district attorney at the oyer and terminer, at which defendant was arraigned, that he did not intend to move the trial of the indictment at that term of court, and thereupon deponent returned home under the impression that no action was to be taken in the matter without deponent's presence, or without notifying deponent of any proposed action; that it was some time after said oyer and terminer before deponent ascertained that Carrie Moore was the wife of defendant, and not until some time after defendant had pleaded; that deponent was not present at the time defendant pleaded to the indictment; had no notice of the time of the arraignment and did not learn for a long time afterwards that he had pleaded.

W. HENRY DAVIS.

Sworn to before me, this 30th }
    day of October, 1882. }

EDWARD G. PARKER,<br>*Deputy Clerk.*

STATE OF NEW YORK, } *ss. :*
  CHAUTAUQUA COUNTY. }

Carrie Moore, being duly sworn, says she resides in the village of Jamestown, in said county; that in or about the year 1876, at the city of Rochester, Monroe county, New York, depo-

nent was duly married to George Moore, of said Rochester, and ever since said time has been and now is his lawful wife; that at the time of marrying said Moore deponent was a single woman and had never previously been married, and has never since been married, and that the said George Moore is the only husband deponent has ever had, and the only man with whom deponent was ever united to in marriage; that deponent was married to said Moore, at the city of Rochester, by one Lacy, a Methodist minister of the gospel, who then resided in Rochester; that at the time of the alleged murder of Emma Roberts by the said George Moore, deponent was living with him, and knows of her own knowledge as to the alleged whipping, and that deponent knows that the said George Moore never whipped the said Emma to an unreasonable extent, and that when he did whip her it was for her misconduct and not for the purpose of simple cruelty; that the said Emma did not die in a number of weeks after she was whipped, and that her death was caused from scarlet fever, and that the whipping she received at said George's hands in no wise contributed to her death, as deponent believes; that said Emma Roberts told deponent shortly previous to her death that the sore upon her arm alleged to have been made by the whipping of said George Moore was caused by said Emma burning herself, and not otherwise; that the said Emma lived with deponent and her husband for about two months.

That as soon as she died the said George immediately notified her mother of the death. That the deponent believes that said George has been indicted at the instance of and through the malice of third persons, and particularly through the intermeddling of one Mary Harmon, of Lockport, who was and is unfriendly to deponent and her said husband, and, as deponent believes, circulated false reports with reference to the whipping and death of said child, solely for the purpose of making trouble for said George and this deponent. That said George is wholly and in all things innocent of the mur-

der of said child, and that she died a natural death and not otherwise.

CARRIE MOORE.

Sworn and subscribed to before me, this }
16th day of September, 1882. }

M. P. STRUNK, *J. P.*

STATE OF NEW YORK, } *ss.:*
NIAGARA COUNTY, CITY OF LOCKPORT. }

George Moore, being duly sworn, says he is the defendant herein. That in or about the year 1876, he was duly married to one ——— ———, now Carrie Moore, at the city of Rochester, N. Y., by the Rev. Mr. Lacy, a Methodist minister of the gospel. That deponent had never been married prior thereto and that the said Carrie is the only woman with whom deponent had ever been united to in marriage.

That at the time deponent pleaded to the indictment herein he had no knowledge of the fact that the said Carrie Moore, deponent's said wife, had been used as a witness against him before the grand jury. That deponent's counsel was not in attendance and deponent had no one to advise with at the time he pleaded. That the said Carrie Moore is now and ever since the said marriage has been the lawful wife of the said defendant.

GEORGE MOORE.

Sworn and subscribed to before me, this }
30th day of October, 1882. }

EDWARD G. PARKER,
*Deputy Clerk.*

*W. Henry Davis*, for defendant, made and argued the following points:

I. Defendant's counsel moves that defendant may be allowed to withdraw his plea of "not guilty" for the purpose of a motion in his behalf to quash or set aside the indictment. (This was objected to by the district attorney, and objection overruled.)

II. In order to attack an illegality not appearing upon the face of the indictment, a motion to quash or set aside the indictment would seem to be the proper practice (1 *Bish. Crim. Pro.* [*3d ed.*], *sec.* 763; *People* agt. *Shattuck*, 6 *Abb. N. C.*, 33; *N. S.* agt. *Coolidge*, 2 *Gall.*, 364; *Reg.* agt. *Hearn*, 9 *Cox Cr. Cases*, 433; *People* agt. *Hulbert*, 4 *Denio*, 136). Chief justice BRONSON said, in *People* agt. *Hulbert* (4 *Denio*, 136), " that the indictment when complete imparts absolute verity. It cannot be impeached except on motion for insufficient evidence, or any other fact or irregularity in the proceedings." In the same case (*p.* 136) the court further observed : " In *Low's case* (4 *Greenl.*, 439) so long as the record remains no defect in the evidence upon which it was founded, nor any irregularity in the proceedings, however great, can furnish an answer to it. But when the ends of justice require it a record may be set aside on motion, and when set aside that is the end of it " (*People* agt. *Restenblatt*, 1 *Abb. Pr.*, 268; 3 *Am. Law Reg.* [*O. S.*], 418; *People* agt. *Strong*, 1 *Abb. Pr.* [*N. S.*], 247, 249).

III. The grand jury is a constituent part of the court of oyer and terminer, and all the proceedings controlled, regulated and governed by the court of oyer and terminer, and this may be done after the grand jury has adjourned. (*People* agt. *Naughton*, 7 *Abb.* [*N. S.*], 421, 422, 424; 30 *How. Pr.*, 430; *State* agt. *Cowan*, 1 *Head.* [*Tenn.*], 280 ; *Clem.* agt. *State*, 33 *Ind.*, 418.) The evidence given before the grand jury constitutes a part of the record of the court (*State* agt. *Little*, 42 *Iowa*, 51). A court always takes judicial notice of its own record in the case (1 *Wharton on Ev.*, *sec.* 325). And this is so, though not brought before it by affidavit (*Crann* agt. *Smith*, *L. R.*, 4 *Exch.*, 146).

IV. " The oath of the grand juror does not prohibit his testifying to what was done before the grand jury when the evidence is required for the purposes of public justice or the establishment of private right " (*Burnam* agt. *Hatfield*, 5 *Blackford* [*Ind.*], 21). The oath of the grand juror is no

The People agt. Moore

legal or moral infringement to his solemn examination, under the direction of a court, as to evidence before him, whenever it becomes material to the administration of justice (*State* agt. *Broughton*, 7 *Ired.* [*N. C.*], 96, 100). This is a direct motion before the court in which the record remains to set aside or quash it; for that it is void in law, in that it was improperly and unlawfully procured by introducing as a witness the wife of defendant before the grand jury without the consent and against the will of defendant, and in violation of the statute in such case made and provided (*See* 6 *Abb. N. C.*, 34, 36). A witness may be indicted for perjury for false swearing before a grand jury, and grand jurors are competent witnesses to prove what he swore to before them (1 *Whar. Am. Crim. Law, sec.* 508).

V. Section 256 of the Code of Criminal Procedure, reads as follows: "The grand jury can receive none but legal evidence." Although the indictment in this case was found prior to the adoption of this Code, yet we perceive that this section (256) is but the reiteration of the common-law doctrine. No evidence should be presented to a grand jury which would not be legal and competent at the trial before the traverse jury (2 *Hawk. Pl. Cr.*, 353 [*Curw. ed., book* 2, *chap.* 25, *secs.* 138, 139] ; 4 *Hawk. Pl. Cr.* [*Leach's ed.*], 80, 81 ; *Denby's case*, 1 *Leach* [*4th ed.*], 514). An indictment procured upon the knowledge of a grand juror, without his being sworn, is void, and upon a motion for that purpose should be quashed (4 *Hawk. Pl. Cr.*, 82 [*Leach's ed., book* 2, *chap.* 145, *note*]; 2 *id.* [*Curw. ed.*], 354, *note*). The rule is thus laid down. A grand jury ought not to find an indictment upon the evidence of incompetent witnesses, and where an indictment was found upon the testimony of witnesses who had been convicted of an infamous crime, the court told them they ought not to have done so, the witnesses competency having been destroyed (*MS.*). In one case the indictment was quashed because the witnesses before the grand jury were not properly sworn (6 *Car & P.*, 90; 25 *Eng. C. L.*, 336). In the *U. S.* agt. *Cool-*

*idge* (2 *Gallison*, 364), the indictment was quashed by judge STORY, for the reason that one of the witnesses before the grand jury was not sworn (see opinion of the court at p. 367). An indictment should be quashed when it appears by affidavit that it was found by the grand jury without adequate evidence to sustain it (*People* agt. *Restenblatt*, 1 *Abb. Pr.*, 268; 3 *Am. L. Reg.*, 248, 249; *People* agt. *Hyler*, 2 *Parker*, 570). If any illegal evidence has been introduced before the grand jury which bears in the smallest degree upon the final result of their deliberations, it cannot properly be disregarded, and the indictment should be set aside (*Worrall* agt. *Parmlee*, 1 *N. Y.*, 519; *Anderson* agt. *Rome, &c.*, 54 *N. Y.*, 334; *Baird* agt. *Gillett*, 47 *N. Y.*, 186). Since the decision of the case of the *People* agt. *Briggs* (60 *How. Pr.*, 17), deciding the incompetency of the wife as a voluntary witness against the husband (*per judge* OSBORN), the same question has been decided the same way in the case of *Byrd* agt. *The State* (57 *Miss.*, 243), reported since judge OSBORN's decision. See, also, *People* agt. *Crandan* (17 *Hun*, 490), which holds directly that the wife is not a competent witness in a criminal action against her husband. Any defect which, in any stage of a criminal proceeding will vitiate the indictment, may be taken advantage of by plea in abatement (2 *Hales' Plg. of the Cr.*, 236). Any defect or irregularity appearing upon the face of the indictment or upon some matter of fact extrinsic of the record, may be cured by plea in abatement to quash (1 *Bish. Cr. Pr.*, 416).

The testimony of defendant's wife before the grand jury was well calculated to prejudice that body against defendant, for she relates with somewhat of detail, the facts and circumstances under which her husband committed the worst of human crimes, wholly without motive. In the absence of her testimony it would seem unreasonable to suppose, and unfair to conclude, that the defendant would have been indicted for the crime of murder. The very presence of the wife before the jury asseverating to those facts, so incriminative in their

nature, and taking place in the privacy of her home, was well calculated to exercise a most potent and improper influence. It would seem to be a sort of trifling with or mockery of the precepts of the law, and the practice of the courts, to attempt to extenuate so grave an error. The wife being in no wise a competent witness, and her testimony before the grand inquest being so vitally material, and the indictment demanding a punishment so dreadful, it would seem proper that it should be set aside.

At an adjourned term of the Niagara circuit court and court of oyer and terminer, held at the court-house at the city of Lockport, in and for the county of Niagara, on the 30th day of October, 1882.

Present — Hon. ALBERT HAIGHT, *Justice Supreme Court.*

The grand jury, at a previous term of this court, having found a bill of indictment against the defendant for the crime of murder, and the defendant having moved, on the affidavits of W. Henry Davis, George Moore and Carrie Moore, and the admissions of the district attorney as to the testimony given before the grand jury, and that the defendant and Carrie Moore were husband and wife at the time of the finding of the bill of indictment herein against defendant, and that the said Carrie Moore was sworn and gave material testimony before the grand jury.

Now, after reading said affidavits and the testimony given before the grand jury, by which it appears that Carrie Moore, the wife of the said defendant, was sworn as a witness in behalf of the people against her said husband, before said grand jury, on the investigation of the charges against the defendant, whereon the indictment was found, and that said Carrie Moore, among other things, testified on such hearing before said grand jury, that said defendant, from time to time, between the 16th day of November, 1878, and the 8th day of December, 1878, whipped, misused and maltreated Emma Roberts, in a cruel and inhuman manner, and the

Matter of Hewitt.

question before said grand jury being whether or not the said defendant killed said Emma Roberts by said whipping, misuse and maltreatment, and the said indictment having been in part based and founded upon such incompetent evidence, and after hearing W. Henry Davis, of counsel for the defendant, and Mr. Ashley, district attorney of Niagara county, in opposition thereto, it is

Ordered and adjudged that said indictment be and the same hereby is quashed or set aside, and the prisoner remanded to await the action of another grand jury.